UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMANDA JIA XIN LIEW**,<br><br>         Plaintiff,<br><br>    v.<br><br>**ROBERT P. SANDERS**, *et al.*,<br><br>         Defendants. | Case No. 1:24-cv-00342 (TNM) |

## MEMORANDUM OPINION

Amanda Jia Xin Liew is a Canadian citizen who wants to live with her husband in the United States. Because Liew's husband is a U.S. citizen, he sponsored her immigration application by filing a Form I-130 Petition with the U.S. Citizenship and Immigration Services. The agency approved her petition and she sat for an interview with a consular officer at the U.S. Consulate General Montreal. But after the interview, the U.S. Department of State refused her visa and placed her application into "administrative processing." Compl. ¶¶ 22–23, ECF No. 1. That was the last Liew heard from State about her application.

So Liew filed this lawsuit seeking to move things along. State responded by moving to dismiss the Complaint. It argues that Liew lacks standing to sue one Defendant. And it says her claims against the others fail because (1) Liew generally lacks Article III standing; (2) State has already discharged its duty to issue or refuse the visa; (3) the consular nonreviewability doctrine shields a visa refusal from judicial inspection; and (4) assuming the visa had not been refused, any delay in adjudication is reasonable. With one exception, State's arguments are sound. So the Court will grant its Motion and dismiss the Complaint.

I.

Liew is a Canadian citizen who resides in Waterloo, Ontario. Compl. ¶ 11. She is married to a U.S. citizen, Matthew Wallace. *Id.* ¶ 18. Understandably, the couple wants to live together—and do so in the United States. *Id.* ¶ 20. In 2021, Wallace initiated immigration proceedings on his wife's behalf by filing a Form I-130 (Petition for Alien Relative) with the U.S. Citizenship and Immigration Services. *Id.* ¶ 18. About a year later, the agency approved Liew's petition, which allowed her to move to the next step in the application process: an interview with a consular officer at the U.S. Consulate General Montreal. *Id.* ¶ 21. During that interview, Liew "responded truthfully to all questions and provided all requested information." *Id.*

But then the State Department refused Liew's visa "under INA § 221(g)." *Id.* ¶¶ 22–23; *see Visa Status Check*, U.S. Dep't of State, https://ceac.state.gov/CEACStatTracker/Status.aspx (last visited June 17, 2024) (confirming "Immigrant Visa Case Number: MTL2022740012" has been "Refused").[1] That refusal happened in April 2023, and it had the alleged effect of placing Liew's "application into a status called 'administrative processing.'" Compl. ¶ 23. Since the refusal, Liew has often asked about the status of her visa. *Id.* ¶ 24. But she has received no "meaningful responses." *Id.*

Liew says the alleged delay has caused her personal, emotional, and financial hardships. *Id.* ¶¶ 8–10. She and her husband have been together for seven years and married for two of those years. *Id.* ¶ 8. They want to start a family, but their separation has made it impossible "to

---

[1] The Court may take judicial notice of the contents of a government website, *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013), and it may consider such contents at the motion to dismiss stage without converting the motion into one for summary judgment, *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 272 (D.D.C. 2011).

plan for the future." *Id.* Liew lined up a job in the United States hoping to have her visa issued. *Id.* ¶ 9. But the alleged delay has put that plan "on hold," and caused her to miss out "on job opportunities in Canada as a result of the uncertainty surrounding her visa application." *Id.* Then there are the financial troubles. The couple spends roughly $6,000 a year on travel expenses to see each other, "which is taking a toll on their finances." *Id.* ¶ 10. And on top of the travel costs, Liew and her husband "must maintain two households" in Canada and the United States at a significant expense. *Id.*

Ten months after the refusal, Liew filed this lawsuit. *See id.* ¶¶ 22–23. She sued several State officials: Robert Sanders (the Consul General at the U.S. Consulate General Montreal); Marybeth Turner (the Deputy Chief of Mission at the U.S. Embassy in Canada); and Antony Blinken (the Secretary of State). *Id.* ¶¶ 12–14. She brings two claims against them: an Administrative Procedure Act (APA) claim and a mandamus claim under 28 U.S.C. § 1361. Both claims challenge State's alleged "failure to conclude the processing of [Liew's] visa application within a reasonable time." *Id.* ¶ 5.

State moved to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Defs.' Mot. Dismiss, ECF No. 6. That motion is now ripe.

## II.

The Court begins with State's standing arguments. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 94–95 (1998). To survive a motion to dismiss under Rule 12(b)(1), the Complaint's allegations must establish a plausible basis for the Court's jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). And jurisdiction, of course, encompasses standing to sue under Article III. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). Under Rule 12(b)(1), the Court "assume[s] the truth of all material factual allegations in the complaint and

construe[s] the complaint liberally, granting [Liew] the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up).

"[S]tanding doctrine helps ensure that in each case, the proper plaintiff is suing the proper defendant over a kind of injury the Court is able to resolve." *Massachusetts Coal. for Immigr. Ref. v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 3d ----, 2023 WL 6388815, at *5 (D.D.C. 2023). This means Liew must plausibly allege "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560–61).

State argues that Liew generally lacks standing to sue any of the Defendants because she has not alleged an injury-in-fact that is redressable by a favorable decision. *See* Defs.' Mot. at 22–30.[2] It also argues that Liew specifically lacks standing to sue Secretary Blinken because he has no authority over the visa adjudication process. *See id.* at 16–17. The Court addresses each of these arguments in turn.

*First*, Liew has Article III standing as a general matter. She has alleged monetary harm, *see* Compl. ¶¶ 6–9, which "readily qualif[ies] as [a] concrete injur[y] under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). And because this harm stems from the uncertainty caused by State's alleged delay, the Court could remedy that uncertainty—and its attendant harm—with an order compelling adjudication. *See Yaghoubnezhad v. Stufft*, --- F. Supp. 3d ----, 2024 WL 2077551, at *5 (D.D.C. May 9, 2024) (holding that delay-related

---

[2] The Court's page citations refer to the pagination automatically generated by CM/ECF.

"injuries plausibly may be redressed with an order to complete [a visa application] review more expeditiously").

*Second*, Liew lacks standing to sue Secretary Blinken because her alleged injuries are neither traceable to the Secretary nor remediable by an order directed at him. *See* Defs.' Mot. at 16–17. Congress carefully circumscribed "[t]he Secretary's role in granting and refusing visas." *Yaghoubnezhad*, 2024 WL 2077551, at *5. It gave the Secretary broad "administration and . . . enforcement" authority relating to "the powers, duties and functions of diplomatic and consular officers of the United States, *except* those powers, duties and functions conferred upon the consular officers *relating to the granting or refusal of visas*." 8 U.S.C. § 1104(a) (emphasis added).

Under the plain meaning of this statute, consular officers have "exclusive authority" over visa adjudications. *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). And the Secretary is "expressly precluded" from exercising any authority in these matters. *See Yaghoubnezhad*, 2024 WL 2077551, at *5. Because Congress carved the Secretary entirely out of the visa adjudication process, Liew lacks standing to sue him. *See Sedaghatdoust v. Blinken*, No. 1:23-cv-03218 (TNM), 2024 WL 2383228, at *2 (D.D.C. May 23, 2024).

But that still leaves two other Defendants—Robert Sanders and Marybeth Turner. *See* Compl. ¶¶ 12–13. State makes no specific standing arguments for these Defendants. And both Consul General Sanders and Deputy Chief of Mission Turner appear to qualify as "commissioned consular officers," 22 C.F.R. § 40.1(d), with authority over visa adjudications, *see* 8 U.S.C. § 1104(a). So the Court proceeds to analyze the merits of Liew's claims related to them.

### III.

To defend against a Rule 12(b)(6) challenge, the Complaint must plausibly "state a claim upon which relief can be granted." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 552 (2007). This requires the Complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

On the merits, Liew's claims founder for three reasons.[3]

*First*, State does not have a discrete duty to take any further action on Liew's refused visa application. The presence of some nondiscretionary duty is essential to any claim for undue delay. *See Sedaghatdoust*, 2024 WL 2383228, at *3. After all, an agency has no duty to act *quickly* if it has no duty to *act*. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004) ("[T]he only agency action that can be compelled under the APA is action legally *required*.").

That principle brings an end to this case. State has already discharged the only duty it owes Liew—to either "issue the visa" or "refuse the visa under INA § 212(a) or 221(g)." 22 C.F.R. § 42.81(a); *see also* 8 U.S.C. 1202(b) ("All immigrant visa applications shall be reviewed and adjudicated by a consular officer."). After review by a consular officer, State refused Liew's visa under INA § 221(g)—a fact pled in the Complaint (at ¶¶ 22–23) and confirmed by State's website, *see Visa Status Check*, U.S. Dep't of State, https://ceac.state.gov/CEACStatTracker/Status.aspx (last visited June 17, 2024) (showing "Refused" for Immigrant Visa Case Number MTL2022740012).

Liew says the Immigration and Nationality Act and APA demand more of State. True, the INA says that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a

---

[3] The Court addresses Liew's APA and mandamus claims together because the legal standards in this context are "identical." *Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. 2020).

consular officer." 8 U.S.C. § 1202(b). But State has already reviewed and adjudicated Liew's visa—it refused it. Compl. ¶¶ 22–23. So the mandate in § 1202(b) "does not resolve the dispute here." *Yaghoubnezhad*, 2024 WL 2077551, at *7.

Nor can Liew seek refuge in 5 U.S.C. § 555(b), which says an agency must "conclude a matter presented to it" "within a reasonable time." Pl.'s Opp'n at 20, ECF No. 7. Again, State has already reached a conclusion on Liew's application. And in any event, Liew cannot rely on the "general directive" in § 555(b) "to impose a duty that has no basis in the INA or its implementing regulations." *Yaghoubnezhad*, 2024 WL 2077551, at *9. In sum, State has "fully performed the only duties" it owes Liew. *Sedaghatdoust*, 2024 WL 2383228, at *3. And no statute or regulation "create[s] an additional duty to engage in post-refusal reconsideration of the visa application." *Id.*

*Second*, the doctrine of consular nonreviewability forbids the Court from tinkering with State's refusal decision. *See Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999) ("The doctrine holds that a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise."). This doctrine extends to State's "decision to place [Liew's] visa application into post-refusal administrative processing." *Sedaghatdoust*, 2024 WL 2383228, at *3 (cleaned up).

State may have valid reasons—political or otherwise—for giving certain visa applications a second look. But no statute or regulation *requires* State "to engage in discretionary re-adjudication" of all visa applications. *Yaghoubnezhad*, 2024 WL 2077551, at *11. Quite the opposite: Once State has rendered "a decision, the Court must 'steer clear of the substance of the decision.'" *Id.* (quoting *Al-Gharawy v. DHS*, 617 F. Supp. 3d 1, 13 (D.D.C. 2022)). And here

7

"that means refraining from ordering additional processing of an already refused visa application." *Id.*

*Third*, assuming State has not already adjudicated Liew's visa, the ten-month delay between State's refusal and Liew's suit is patently reasonable. Six factors—commonly known as the "*TRAC* factors"—bear on the reasonableness of an agency's delay:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the Court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the Court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the Court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984)) (cleaned up).

Liew urges the Court to hold off on any *TRAC* analysis. Citing out-of-circuit authority, she says "there is insufficient evidence at the motion to dismiss stage . . . to rationally use *TRAC*" to evaluate the reasonableness of State's alleged delay. Pl.'s Opp'n at 22. Not so. Courts in this circuit routinely "employ[] the *TRAC* factors at the motion to dismiss stage to determine whether a [plaintiff's] complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Isse v. Whitman*, No. 22-cv-3114 (BAH), 2023 WL 4174357, at *6 (D.D.C. June 26, 2023) (cleaned up). Indeed, "[t]here is no categorical prohibition" on evaluating the *TRAC* factors at this stage. *Da Costa v. Immigr. Inv. Program Off.*, No. 22-cv-1576 (JEB), 2022 WL 17173186, at *12 (D.D.C. Nov. 16, 2022), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023) (affirming dismissal based on the *TRAC* factors). So long as the "record contains enough facts to evaluate the *TRAC* factors" at the pleading stage, the Court "may appropriately decide to

do just that." *Id.* (cleaned up). As the following analysis illustrates, the Complaint here fits the bill. *See id.*

The balance of the *TRAC* factors reveals the reasonableness of State's alleged ten-month delay. The first two factors "strongly favor" State because "Congress has not supplied a rule of reason" or "statutory deadline" for processing immigrant visa applications. *Yaghoubnezhad*, 2024 WL 2077551, at *12. This first factor is the most important one, meaning Liew faces an uphill climb indeed. *See Mohammad v. Blinken,* 548 F. Supp. 3d 159, 165 (D.D.C. 2021). The fourth factor "strongly disfavors" Liew because granting her application would condone judicial "line jumping" that puts her application "ahead of longer-pending petitions." *Da Costa*, 80 F.4th at 343. Nor has Liew alleged that State engaged in impropriety that contributed to the delay, so the sixth factor does not help her either. *See Mohammad*, 548 F. Supp. 3d at 169.

That leaves the third and fifth factors, neither of which helps Liew. *See Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021) (insufficient harm where plaintiff "and the lives of his family members are on hold"). The harms she faces are mitigated by the fact that she and her husband often visit each other, though at some expense. *See* Compl. ¶¶ 8, 10. And presumably Wallace could move to Canada to ameliorate their predicament. More, even if the third and fifth factors favored Liew, they cannot "tip the scales" when weighed against the other four. *Da Costa*, 80 F.4th at 344; *Mukkavilli v. Jaddou*, No. 23-5138, 2024 WL 1231346, at *2 (D.C. Cir. Mar. 22, 2024) (unpublished). So Liew loses on the *TRAC* factors.

One final observation: Courts evaluating undue delay claims have sanctioned far longer delays than the ten-month delay alleged here. *See Yaghoubnezhad*, 2024 WL 2077551, at *11 (collecting cases).

## IV.

The State Department has validly refused Liew's visa application. While that determination is undoubtedly disappointing, it is conclusive "and cannot be disturbed by judicial decree." *Sedaghatdoust*, 2024 WL 2383228, at *4. So the Court will grant State's Motion to Dismiss. A corresponding Order will issue today.

Dated: June 17, 2024                                          TREVOR N. McFADDEN, U.S.D.J.